# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CHRISTOPHER REED,** | ) |
| | ) |
| **Plaintiff,** | ) Case No. |
| | ) |
| v. | ) **Judge** |
| | ) **Magistrate Judge** |
| **WEST END PIZZA, INC., d/b/a** | ) |
| **JET'S PIZZA, and LARRY LAVIGNE,** | ) |
| **individually,** | ) **Jury Demand** |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

For his Complaint against Defendants West End Pizza, Inc., d/b/a Jet's Pizza ("West End Pizza"), and Larry Lavigne, individually ("Lavigne") (collectively "Defendants"), Plaintiff Christopher Reed ("Mr. Reed"), states:

## PARTIES

1. Mr. Reed formerly worked for Defendants as a lead delivery driver at one or more of their pizza restaurants in Nashville, Tennessee.

2. Defendant West End Pizza is a Tennessee corporation with its principal place of business at 214 25th Avenue, North, Nashville, Tennessee 37203. This defendant may be served with process through its registered agent, Larry Lavigne, 5 Crooked Stick Lane, Brentwood, Tennessee 37027.

3. Defendant Lavigne is a resident of Brentwood, Tennessee, and the owner of Defendant West End Pizza. He may be served with process at his residence, 5 Crooked Stick Lane, Brentwood, Tennessee 37027.

## JURISDICTION AND VENUE

4. This is an action for equitable relief and damages for unlawful employment practices brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"). The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391.

5. Mr. Reed has met all conditions precedent to the filing of this Complaint. He timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 21, 2018. The EEOC mailed him a Notice of Right to Sue on November 4, 2019.

## FACTS

6. Mr. Reed is an African-American individual who worked for Defendants as a lead delivery driver at one or more of their pizza restaurants in Nashville, Tennessee, for approximately 8 to 9 years until Defendants discharged him on or about October 15, 2018.

7. Mr. Reed was qualified for and performed his job for Defendants in an excellent manner, as evidenced by his comparatively long tenure and successful work history with the company. He never received any write-ups or disciplinary action during his employment.

8. In January 2018, Mr. Reed was a witness to blatant acts of race discrimination, racial harassment, and retaliation that another African-American delivery driver formerly employed by Defendants, Charles George, experienced.

9. Mr. Reed was aware that another delivery driver, Abdullah Sadler, had called Mr. George "Ni\*\*er!" at work in an offensive and derisive manner and tone. He was aware that Sadler did not deny doing so and that Defendants' management confirmed that he had done so.

He was further aware that Sadler had a history of making discriminatory and disrespectful comments in the workplace.

10. Mr. Reed was aware that Mr. George had reported Sadler's offensive conduct to management and to Jet's Pizza's corporate Human Resources ("HR") Department in Sterling Heights, Michigan.

11. Local store management and corporate HR informed Defendants' owner, Defendant Lavigne, of Sadler's discriminatory conduct and Mr. George's complaints about it.

12. Mr. Reed opposed the discrimination and harassment that he observed and knew Mr. George had experienced.

13. Mr. Reed was aware that Defendants purported to discharge Mr. Sadler for his discriminatory conduct but that, a couple of days later, they allowed Sadler to return to work at the same store.

14. Mr. Reed was aware that Defendants' District Manager, Tony McGrath, instructed two store managers to "find a way to fire" Mr. George because he had reported discrimination to management and corporate HR.

15. Mr. Reed was aware that, shortly thereafter, Defendants discharged Mr. George. Mr. Reed was shocked by Mr. George's discharge in light of all that he had seen occur at Defendants' store and the strikingly differently treatment of other employees who had received customer complaints and engaged in worse conduct, including but not limited to Sadler. Other employees had received progressive discipline, including write ups and warnings, or no corrective action.

16. Mr. Reed was aware that, in discharging Mr. George, Defendants treated him vastly differently than they had treated non-African-American delivery drivers and employees

who had not reported discrimination, including but not limited to Sadler, who had used offensive discriminatory language in the workplace and been the subject of several employee and customer complaints.

17. Consequently, Mr. Reed complained to two store managers and asked them for the real reason for Mr. George's discharge.

18. Defendants' store managers advised Mr. Reed that District Manager McGrath had instructed them to terminate Mr. George because he had reported Sadler's discriminatory conduct to management and corporate HR.

19. Mr. Reed was aware that, following his discharge, Mr. George filed a Charge of Discrimination against Defendants with the EEOC.

20. Mr. Reed participated in investigations of Mr. George's EEOC claims and gave truthful statements to management, investigators and attorneys for both parties about the discrimination he had observed and what had happened to Mr. George, as described above.

21. Defendants' General Manager, Earon Edwards, stated to Mr. Reed that its owner, Defendant Lavigne, wanted to know if Mr. Reed was going to testify or provide a statement on behalf of Mr. George.

22. Edwards further told Mr. Reed that if he did testify or give a statement on behalf of Mr. George, it would impact his job, and that Defendants would make things very difficult for him if he did.

23. Mr. Reed responded to Edwards that he was going to tell the truth, and that he could not and would not lie for Defendants about what had happened to Mr. George.

24. Defendants then began to discriminate and retaliate against Mr. Reed based upon his association with and/or advocacy on behalf of Mr. George and his opposing, and participating in investigations of, the discrimination, harassment, and retaliation that George experienced.

25. Following his protected opposition, advocacy, and participation activity, Defendant's non-African-American supervisors subjected Mr. Reed to acts of retaliation and retaliatory harassment that adversely affected him in the terms, conditions, and privileges of employment. Specifically, Defendants cut his work days from four to five days to two days per week, despite his longevity and successful work history. Further, they took his normal routes away and started sending him to dangerous neighborhoods to which they did not send other drivers. Moreover, they refused to provide him compensation that he had earned, including but not limited to credit card tips and bonuses, resulting in significant lost income. They also refused to reimburse him for business miles that he drove to deliver products, which they had reimbursed him for in the past. All of these retaliatory acts were intended to force Mr. Reed to quit his job.

26. Mr. Reed reported and opposed the discrimination and retaliation that he experienced to management and to corporate HR. Corporate HR advised him that it would discuss his concerns with Lavigne and local management.

27. The discrimination and retaliation that Mr. Reed experienced continued after he reported it to management and corporate HR.

28. Consequently, in October 2018, Mr. Reed advised Edwards that he was going to file an EEOC complaint against Defendants and a complaint with the Department of Labor. Edwards responded that if Mr. Reed complained to the EEOC, he would be fired.

29. Mr. Reed submitted an online intake or similar form to the EEOC on or about October 15, 2018, complaining about Defendants' discriminating and retaliating against him.

30. On October 15, 2018, Mr. Reed showed Defendants' Store Manager, Andrew King, a copy of an email he had received from the EEOC on his phone regarding his online submission and advised King that he had complained to the EEOC about Defendants' discriminating and retaliating against him.

31. King then called Edwards in Mr. Reed's presence. Mr. Reed heard Edwards state, "Larry [Lavigne] said to fire him if he files with the EEOC. So tell him he's fired and call the cops."

32. Defendants discharged Mr. Reed on October 15, 2018.

33. King stated to Mr. Reed that Edwards had directed him to discharge him for "insubordination" because Mr. Reed stated he was filing an EEOC complaint against Defendants.

34. Another one of Defendants' managers later informed Mr. Reed that Defendants had discharged him because he had supported Mr. George's EEOC claims and had told Defendants' attorney about the discrimination and retaliation he saw George experience when the attorney was interviewing him about George's EEOC Charge.

35. Defendants discriminated against Mr. Reed in the terms, conditions, and privileges of employment and discharged him because of his race and/or his association with and/or advocacy on behalf of other African-American employees, in violation of Title VII and Section 1981.

36. Defendants retaliated against and discharged Mr. Reed for opposing, reporting, and refusing to remain silent about racial discrimination, harassment, and retaliation and/or for participating in investigations of racial discrimination, harassment, and retaliation complaints conducted by investigators, attorneys, and the EEOC, in violation of Title VII and Section 1981.

37. Defendant Lavigne had supervisory authority over all managers and employees in his restaurants, communicated with his managers, and compelled, commanded or directed them to engage in the discrimination and retaliation against Mr. Reed as described in this complaint, in violation of Section 1981. Lavigne is individually liable to Mr. Reed under Section 1981.

38. Defendants' conduct as described in this Complaint was malicious and/or recklessly indifferent to Mr. Reed's federally protected rights, entitling him to punitive damages under Title VII and Section 1981.

39. As a direct result of Defendants' discriminatory and retaliatory conduct, Mr. Reed lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

## RELIEF REQUESTED

WHEREFORE, Mr. Reed respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life;

4. Front pay and damages for lost benefits;

5. Punitive damages;

6. Attorneys' fees, costs and litigation expenses;

7. Prejudgment interest and, if applicable, post judgment interest; and

8. Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (TN BPR No. 19112)
Law Office of Douglas B. Janney III
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 742-5900
doug@janneylaw.com

Attorney for Plaintiff